CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/26/2019
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JONATHAN H., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:18-cv-54 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jonathan H. ("Jonathan"), proceeding *pro se*, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Jonathan alleges that the Administrative Law Judge ("ALJ") erred by finding that he was not disabled and failing to award benefits. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 13).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Jonathan failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments

1

requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). "The threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Jonathan filed for DIB and SSI on March 6, 2014, claiming disability due to tachycardia, chest pain, diabetic ketoacidosis, uncontrolled type 1 diabetes, weight loss, weakness and tiredness, body ache/sore skin/rash, vitamin D deficiency, hyperlipidemia, postural tachycardia syndrome (POTS), hypertension, palpitations, sleep disorder, and bronchitis, with an alleged onset date of December 18, 2013. R. 100–01, 111–12. Jonathan was 22 years old when he applied for DIB and SSI, and was also 22 years old on his alleged onset date. R. 100, 111. Jonathan's date last insured was September 30, 2015;[2] thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 32; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Additionally, to receive SSI, Jonathan must show that he has been disabled for at least twelve months prior to the date of filing his disability application. The state agency denied Jonathan's applications at the

---

prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Jonathan's initial application listed his date last insured as September 30, 2014. R. 111.

2

initial and reconsideration levels of administrative review. R. 100–49. On January 31, 2017, ALJ Susan G. Smith held a hearing to consider Jonathan's claims for DIB and SSI.[3] R. 67–99. Frances H., Jonathan's mother, served as Jonathan's representative, and vocational expert Linda Augins testified. R. 67. On July 5, 2017, the ALJ entered her decision analyzing Jonathan's claims under the familiar five-step process[4] and denying his claims for DIB and SSI. R. 30–42.

The ALJ found that Jonathan had not engaged in substantial gainful activity since December 18, 2013, the alleged onset date. R. 32. The ALJ determined that Jonathan suffered from the severe impairments of diabetes mellitus type 1, orthostatic hypotension with syncope, and arrhythmia. R. 33. The ALJ determined that Jonathan's sinusitis, vitamin D deficiency, transient bronchitis, muscle pain, episodic skin rash, sleep problems, and hyperlipidemia were not severe medically determinable impairments. Id. She also determined that Jonathan's possible adrenal deficiency was not a medically determinable impairment. Id. The ALJ determined that Jonathan's impairments, either individually or in combination, did not meet or medically equal a listed impairment, specifically listings 4.04 (ischemic heart disease), 4.05 (recurrent arrhythmias), and 9.00 (endocrine disorders).R. 33–34. The ALJ did not find any mental impairment.

The ALJ concluded that Jonathan retained the residual functional capacity ("RFC") to

---

[3] Jonathan had his first hearing on June 27, 2016, but it was postponed so that Jonathan could try to find a representative. R. 50–55. His second hearing on October 18, 2016 was also postponed. Jonathan's mother and grandmother both appeared as his representatives, but the ALJ urged Jonathan to choose only one. Additionally, Jonathan and his family brought additional records to the hearing that the ALJ had not yet reviewed. R. 56–66.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

perform sedentary work with limitations. R. 34. Jonathan could climb ramps and stairs but never ladders, ropes, or scaffolds, and he could occasionally stoop, kneel, balance, crouch, and crawl. Id. For environmental limitations, Jonathan must avoid even moderate exposure to hazards including dangerous moving machinery, uneven terrain, and unprotected heights. Id. He must also avoid concentrated exposure to vibrations. Id. The ALJ determined that Jonathan would not be able to perform his past relevant work as an institution cook or server. R. 40. Based on his age, education, work experience, and RFC, the ALJ determined that Jonathan could perform jobs that exist in significant numbers in the national economy, such as envelope addresser, call out operator, and charge account clerk. R. 41. Thus, the ALJ concluded that Jonathan was not disabled. R. 42. Jonathan appealed the ALJ's decision and the Appeals Council denied his request for review on February 12, 2018. R. 1–5.

## **ANALYSIS**

Jonathan alleges that the ALJ wrongly determined that he was not disabled, and urges that he be awarded benefits. The Commissioner argues that substantial evidence supports the ALJ's decision and her RFC assessment.

**A. Medical History**

1. Physical Impairments

Jonathan was diagnosed with type 1 diabetes in August 2004. R. 432. Jonathan was hospitalized in December 2013 for a soft tissue infection, diabetic ketoacedosis with dehydration, hyponatremia, and kidney injury from his uncontrolled diabetes. R. 463–92. In early 2014, Jonathan was evaluated at the Stroobants Cardiovascular Center after complaints of chest pain. His echocardiogram was normal, and a "tilt table" test showed possible POTS. R. 588–89, 595. He was diagnosed with tachycardia and orthostatic hypotension. R. 686. However, Jonathan

refused to take the medication prescribed for his heart condition, even after doctors urged him to do so. R. 528, 571, 595, 598. At the last visit with Stroobants that appears in the record, his doctor commented that Jonathan "is noncompliant and unwilling to take the [medication] we recommended, and this is the third time I have advised him to take" it. R. 686. There is no indication in the record that Jonathan ever began taking medication for his heart condition.

Jonathan went to VCU for his diabetes and tachyarrhythmia. From November 2014 through December 2016, providers constantly noted that Jonathan's diabetes was uncontrolled, and that he refused to try different types of insulin that may give him better control over his condition. R. 702, 704, 751–52, 761, 773, 776, 853, 859, 867. Doctors also recommended that Jonathan needs to manage his blood sugar better through his diet and exercise. R. 859, 863, 867. Jonathan at times refused to have labs done, did not undergo certain testing, or did not follow through with referrals to other providers. R. 704, 761, 863. Providers also noted that Jonathan did not take his heart medication, and at one point he told his doctor that he "just deals with" his heart condition. R. 752, 785, 799. Jonathan occasionally reported episodes of syncope. R. 761, 796. At one point, Jonathan complained of back pain and sought pain medication, but his providers refused to prescribe narcotics. R. 785, 795.

In a May 2014 function report, Jonathan wrote that he is able to take care of his infant son. R. 313. He indicated he has no problems with personal care. Id. He can cook complete and simple meals daily, do laundry and clean, drive a car and go out alone, shop in stores weekly, and manage money. R. 314–15. Jonathan reads, watches TV, and plays video games daily. R. 316. In an accompanying pain questionnaire, Jonathan wrote that he has sharp chest pains and all-over body aches, and he takes medication as needed. R. 321–22. Jonathan also completed a fatigue questionnaire in January 2015, in which he indicated that fatigue has been a problem ever

since his diabetes diagnosis. R. 348. He wrote that he does not clean, go to church, or exercise because of fatigue. Id. Jonathan alleged that in his condition, he tires easily and becomes exhausted doing daily tasks, and so needs long periods of rest. R. 349.

Frances, Jonathan's mother, completed a function report on Jonathan's behalf. She indicated that Jonathan does not take care of any other family members (although Jonathan has an infant son). R. 355. She wrote that Jonathan is able to prepare food for himself daily, and does not need reminders to take care of personal needs. R. 356. She indicated that Jonathan does not do any household chores, but also alleged he can drive a car, go out alone, go shopping, and manage money. R. 356, 358–59.

At the hearing, Jonathan testified that he lives with his mother, and his three-year-old son lives with them at least two weeks per month. R. 75. He testified that, as a child, he received homebound instruction from seventh to tenth grade. R. 77. He last tried to work from July 2013 to March 2014 as a cook and server in a kitchen, but had to stop because of his condition. R. 78–79. He had been terminated from a number of other jobs prior to 2013 because he missed too much work due to his health. R. 80–81. He alleged that he applied to "sit-down" jobs, but was never hired. R. 82. He testified that he gets lesions on his feet if he stands for too long. R. 85. Jonathan testified that any exertion requires him to rest immediately and sometimes makes his heart feel like it is beating out of his chest. R. 82–83. He requires multiple insulin shots daily. R. 83. Jonathan testified to also having fainting spells. R. 88–89. He testified that he tries to exercise as his doctors have recommended, and has tried to pay better attention to what he is eating. R. 90. He is not on any medication besides insulin. R. 91.

2. Medical Opinion Evidence

In September 2014, as part of the state agency's initial disability determination, Luc

Vinh, M.D., reviewed the record and determined that Jonathan had the severe medically determinable impairments of diabetes mellitus and recurrent arrhythmias. R. 105, 116. He found Jonathan's hyperlipidemia, essential hypertension, and other and unspecified arthropathies to be non-severe. Id. As part of his RFC evaluation, Dr. Vinh determined that Jonathan could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit each for six hours in an eight-hour day; and push or pull without limitation. R. 107, 117–18. For postural limitations, Dr. Vinh found that Jonathan could stoop, kneel, crouch, and crawl without limitation, frequently climb ramps and stairs, occasionally balance, and never climb ladders, ropes, or scaffolds. R. 107, 118. Dr. Vinh found no manipulative, visual, or communicative limitations. R. 107–08, 118. For environmental limitations, Dr. Vinh found that Jonathan should avoid concentrated exposure to vibration and even moderate exposure to hazards. R. 108, 119. Dr. Vinh determined that Jonathan was capable of performing light work, and thus found him to be not disabled. R. 109–10, 120–21.

As part of Jonathan's request for reconsideration of the state agency's disability determination, Joseph Duckwall, M.D., evaluated the records in February 2015. Dr. Duckwall made the same findings regarding Jonathan's medically determinable impairments. R. 131, 144. Dr. Duckwall also made the same RFC findings as Dr. Vinh. R. 132–33, 145–46. Thus, he also found Jonathan to be not disabled. R. 135, 148.

In March 2017, William Humphries, M.D., performed a consultative examination after Jonathan's hearing. Dr. Humphries observed that Jonathan had occasional tachycardia associated with chest pain and sometimes dizziness, but noted that Jonathan does not take medication for that condition. R. 898. Dr. Humphries wrote that Jonathan is able to feed and dress himself independently. Id. His physical examination was mostly unremarkable. R. 899. Dr. Humphries

diagnosed diabetes mellitus (insulin-dependent, with peripheral neuropathy in four extremities), carpal tunnel syndrome (bilateral, mild), atypical chest pain, tachychardia (probably related to diabetes), chronic cervicolumbar strain, intermittent bronchitis (by history), degenerative joint disease (feet, mild), probable insect bites, and eczema (lower extremities). R. 900. Dr. Humphries determined that Jonathan would be able to: lift twenty-one to fifty pounds occasionally and eleven to twenty pounds frequently; stand or walk and sit each for six hours in an eight-hour workday; frequently reach and occasionally handle, finger, feel, and push/pull with his hands; occasionally operate foot controls; frequently balance, stoop, kneel, and crouch, occasionally crawl and climb stairs and ramps, and never climb ladders or scaffolds; and handle only occasional exposure to unprotected heights, extreme temperatures, and vibrations. R. 902–06. Dr. Humphries also found that Jonathan could perform activities like shopping, travel without assistance, walk a block at a reasonable pace on uneven surfaces, use public transportation, climb a few steps without using a handrail, prepare simple meals and feed himself, care for personal hygiene, and sort, handle, and use paper/files. R. 907.

### B. RFC Determination

In his brief, Jonathan describes the history and progression of his diabetes, including his hospitalizations and difficulties maintaining attendance in school as a child. Pl.'s Br. at 1–2, Dkt. No. 12. He explained that when his health insurance coverage lapsed, he could not continue his treatment plans and skipped medication doses to make it last longer. Id. at 2. He also described that he was terminated from jobs he had in the past because of the strain put on his body. Id. Jonathan asks for full disability retroactive to his alleged onset date. Id. at 3. Because Jonathan proceeds *pro se*, I liberally construe his brief as a general challenge to the ALJ's determination of Jonathan's RFC finding. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

An RFC finding represents the most a claimant can still do despite his impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner determines the RFC based on all of the relevant evidence in the claimant's record, and it must reflect the combined limiting effects of impairment supported by the medical evidence or the claimant's credible complaints. See Mascio v. Colvin, 780 F.3d 632, 638–40 (4th Cir. 2015). SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). In Mascio, the court agreed with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Jonathan does not allege any specific errors in the ALJ's RFC, and instead contends generally that he tried to work but has been unable to since his alleged onset date. However, I find that substantial evidence supports the ALJ's RFC finding. The ALJ provided a thorough discussion of Jonathan's case and her conclusions. Specifically, she discussed Jonathan's medically determinable impairments, including those she found to be non-severe and why (R.

33); described Jonathan's allegations of impairment, information in his applications and self-reports, and testimony (R. 35); recognized the medical of evidence of record demonstrating Jonathan's insulin-dependent diabetes prior to the alleged onset date (R. 36); thoroughly discussed the medical evidence beginning in December 2013 (R. 36–38); and explained the weight assigned to each medical opinion, including from the state agency consultants and consultative examiner (R. 38–40).

Regarding Jonathan's diabetes, the ALJ described in detail Jonathan's December 2013 hospital admission and subsequent appointments for his uncontrolled diabetes. She accurately observed that doctors repeatedly recommended that Jonathan switch to a more intensive insulin routine to better manage his diabetes, but Jonathan always refused to do so. R. 36–38. Indeed, the record does not appear to contain any objective evidence to support his allegations of side effects caused by other types of insulin, and it also does not appear that he ever complied with his providers' recommendations. The ALJ also described that Jonathan's physical examinations were frequently unremarkable, and he failed to follow up with endocrinology appointments, instead requesting short-acting insulin only for "as-needed" use. R. 38. As for Jonathan's heart condition, the ALJ described the results of all of Jonathan's cardiac testing, but again explained how Jonathan consistently refused to take his medication. She noted accurately that Jonathan was not taking the medication as prescribed at the onset of his heart condition; his cardiologist told him at least three times to take his medication, but he refused; he told another provider who managed his diabetes that he "just deals with" his tachyarrhythmia; and Jonathan was consistently unwilling to adhere to the recommended medication regimen.

The ALJ also reviewed all of the opinion evidence. Both state agency consultants determined that Jonathan was capable of light work, but the ALJ afforded those opinions only

partial weight because she found that Jonathan should be further restricted to the sedentary level. R. 39. The ALJ also described the consultative examination in detail, including that most of the physical examination was unremarkable. Id. The ALJ gave "good weight" overall to Dr. Humphries's opinion because he examined Jonathan and his opinion was "generally consistent" with his examination findings. R. 40. The ALJ rejected Dr. Humphries's manipulative limitations and some of the environmental limitations, explaining that the medical records do not support a need for those restrictions. Id.

After describing Jonathan's medical records in detail, the ALJ concluded that Jonathan has experienced periodic illness due to his impairments. R. 38. However, she determined that the medical evidence does not support the degree to which Jonathan claims he is limited because he can do laundry, clean his room and bathroom, drive a car, and care for his infant son. Id. Furthermore,

> [Jonathan's] refusal to take appropriate measures to improve his diabetes mellitus control suggests his condition is not as symptomatic or disabling as alleged. [Jonathan] was often noted to be noncompliant with treatment and has been noted to be dehydrated despite advi[c]e to drink more fluids. He was told to exercise and be more consistent in meals but he has not heeded this advice. He reported that he has difficulty finding the "time" as he had a three-year-old son, indicating that he is too busy, which undermines his allegation of total disability. He has also not been entirely compliant with recommended insulin regimens.

Id. (citations omitted).

Given the ALJ's explanation, I cannot conclude that there is insufficient evidence in the record to support her conclusion here. The ALJ accurately characterized and described the medical evidence, which included repeated mentions of Jonathan's ongoing refusal to heed the treatment advice from his providers. The ALJ did not err in finding that Jonathan's refusal to follow medical advice signaled that his symptoms may not be as disabling as he alleges. Cf. Reese v. Astrue, Civil Action No. 7:10–cv–538, 2012 WL 423630, at *8 (W.D. Va. Jan. 24,

11

2012) (observing that claimant's repeated failure to comply with treatment recommendations, such as refusing to abstain from cigarettes and alcohol, undermined his credibility with regard to his alleged symptoms).

Furthermore, Jonathan testified and indicated on his function reports that he is capable of performing his daily activities, including taking care of his very young child. An ability to do those sorts of activities tends to show that an individual may not be completely disabled. Even so, the ALJ ultimately gave Jonathan the benefit of the doubt in crafting the RFC. She found only three medically determinable impairments, but considered Jonathan's additional non-severe impairments in her decision. She also wrote that "giving benefit to the subjective symptoms as alleged such as difficulty standing and symptoms upon exertion, and to account for the longstanding severe diabetic condition," Jonathan would be limited to a modified sedentary exertion level. R. 40.

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. The Court is "not left to guess" about how the ALJ arrived at her conclusions because the ALJ's findings include a sufficient summary and explanation of Jonathan's medical records, subjective allegations, the opinion evidence, and the ALJ's conclusions. It is not for the Court to re-weigh the evidence, and I find that substantial evidence supports the ALJ's RFC determination here.[5]

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

---

[5] Jonathan submitted additional evidence after the administrative hearing, including education records from 2004 to 2009 (R. 8–11), what appears to be documents from a prior benefits application (R. 12–22), and paperwork from VCU (R. 23–24). None of the evidence is relevant to the disability period at issue, and so I will not consider it.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 26, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge